UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
 :
TECHNOMARINE SA, a Swiss Corporation, :
 :
                      Plaintiff, :
 :
              -v- :
 :
JACOB TIME, INC., a New York :
Corporation; and DOES 1-10, inclusive, :
 :
                      Defendants. :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUL 16 2013

12 Civ. 790 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

    Plaintiff TechnoMarine SA ("TechnoMarine") is a Swiss company that sells watches exclusively through contractually authorized retailers. (Second Am. Compl. ("SAC") ¶¶ 5, 21, ECF No. 28.) Defendant Jacob Time, Inc. ("Jacob Time") is a watch distributor that sells discounted brand name watches through its website. (Id. ¶ 23; Pl.'s Resp. Jacob Time's Rule 56.1 Statement of Material Facts ("Pl.'s 56.1 Reply") ¶ 75, ECF No. 70.) Although Jacob Time is not an authorized retailer of TechnoMarine branded goods, it has sold TechnoMarine watches on its website. (SAC ¶ 24; Pl.'s 56.1 Reply ¶ 76.)

    On February 1, 2012, TechnoMarine filed this action against Jacob Time and unnamed Does 1 through 10, raising various claims related to the unauthorized sale of TechnoMarine watches. On defendant's motion to dismiss the second amended complaint, this Court dismissed TechnoMarine's claims of trademark infringement and dilution, false designation of origin, unfair competition, and conversion. See

1

TechnoMarine SA v. Jacob Time, Inc., 905 F. Supp. 2d 482 (S.D.N.Y. 2012). Remaining before the Court are TechnoMarine's claims of tortious interference with contract and copyright infringement under 17 U.S.C. § 501. Jacob Time has moved for summary judgment as regards both claims. (ECF No. 53.)

For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

I.  BACKGROUND

The following facts are undisputed except where indicated.

Since 1997, TechnoMarine has designed, distributed, and sold watches under its "TM" logo and variations thereof. (SAC ¶ 12; Pl.'s 56.1 Reply ¶¶ 62-66.) It sells the watches exclusively through contractually-authorized dealers. TechnoMarine first published its "TM" logo in the United States on June 15, 2010, and registered the logo with the U.S. Copyright Office on March 16, 2012. (U.S. Copyright No. VA 1-805-911, Decl. of William L. Charron in Supp. of Def.'s Mot. for Summ. J. "Charron Decl." Ex. H, ECF No. 56.) However, none of TechnoMarine's watches are manufactured in the United States. (Dep. of Steven Cohen at 75:17-19, Feb. 27, 2013, Charron Decl. Ex. A.)

Defendant Jacob Time is not an authorized dealer of TechnoMarine watches. Since 2009, Jacob Time has purchased discounted TechnoMarine watches through its affiliated wholesaler and parent company, Solar Time, Inc. ("Solar Time"). (Def.'s Rule 56.1 Statement of Material Facts ("Def.'s 56.1") ¶ 6, ECF No. 55.) However, neither TechnoMarine nor its American subsidiary, TechnoMarine USA,

2

has ever directly sold its watches to Jacob Time or Solar Time. (Pl.'s 56.1 Reply ¶ 79.) Rather, Jacob Time has obtained nearly all of its TechnoMarine inventory from unauthorized dealers who do not have contractual agreements with TechnoMarine. (Def.'s 56.1 ¶ 41.) The only authorized retailers from whom Jacob Time obtained TechnoMarine products were Swiss Gold, Allen M. Jewelers ("Allen M."), and Madison Jewelers. (Id. ¶ 90.) Although plaintiff asserted in its amended complaint that at least one of the TechnoMarine watches that Jacob Time had sold was stolen, it has not presented any such evidence in opposition to the instant motion. (SAC ¶ 31.)

TechnoMarine's standard Authorized Retailer Agreement ("ARA") contains two provisions that place sales-related restrictions on authorized retailers. Paragraph 2(h) states that the authorized retailer may "[n]ot sell TechnoMarine Products through the Internet, although Retailer shall be able to advertise the Products on Retailer's Internet site for Retailer's Location." Relatedly, paragraph 2(i) provides that the authorized retailer will "[n]ot consign, transship or sell TechnoMarine Products in any other manner than at retail in Retailer's location." (ARA with Swiss Gold, Charron Decl. Ex. D.)

In general, title to the watches passes to TechnoMarine's authorized dealers when the watches are delivered, and TechnoMarine is typically paid in full within 30 days of a sale. (Def.'s 56.1 ¶ 43; Cohen Dep. 90:25-92:8.) TechnoMarine has never sued an authorized dealer for breach of contract for selling TechnoMarine watches to unauthorized retailers; rather, it has sent closure letters to those dealers

terminating their relationship on a going-forward basis. (Def.'s 56.1 ¶ 45; Cohen Dep. 123:21-124:7.) When it has sent those closure letters, plaintiff has not demanded return of the watches, but rather allowed the authorized dealer to sell the remaining stock. (Id.)

On November 7, 2011, Jacob Time received a cease and desist letter from TechnoMarine's counsel (Def.'s 56.1 ¶ 28), stating that selling TechnoMarine watches online as an unauthorized dealer was "in direct violation of the contractual agreements that [TechnoMarine] has with its authorized dealers" because "[a]ll TechnoMarine retailers are prohibited from transshipping and/or reselling any TechnoMarine-branded products to any entity that sells such products" (Nov. 7, 2011 Letter, Charron Decl. Ex. F). Prior to this date, TechnoMarine had never communicated with Jacob Time. (Id. ¶ 34.) At this time, however, Jacob Time was not given a copy of TechnoMarine's ARA, nor was it alerted to any particular authorized retailers that it was to avoid. (Def.'s 56.1 ¶¶ 29-30.)

Since receiving the letter, the record discloses only a single instance where Jacob Time purchased a TechnoMarine watch from a TechnoMarine authorized retailer, Allen M. (Id. ¶ 35.) However, plaintiff does not have a written contract with the corporate entity Allen M. It does have such an agreement with Swiss Gold, which is owned by the same 100% shareholder, Allen Mamrout. (Id. ¶¶ 12-13; see also Charron Decl. at Ex. D.) TechnoMarine USA CEO Steven Cohen explained that it is his "understanding" that the ARA with Swiss Gold applies to Allen M. as well. (Cohen Dep. 144:3-145:11.)

4

TechnoMarine filed the instant suit on February 1, 2012. (ECF No. 1.) Following successive motions to dismiss, the Court entered a scheduling order on November 9, 2012, scheduling fact discovery to close March 11, 2013. (ECF No. 44.) Plaintiff did not bring any discovery motions to the Court until February 7, 2013, when it submitted a letter requesting records of all Jacob Time sales of TechnoMarine watches prior to 2009. (ECF No. 46.) The Court denied the request, as it related to material outside the relevant limitations period and plaintiff failed to adequately specify the relevance of the documents requested. (Id.) Plaintiff did not bring any further discovery motions until a telephone conference with the Court on March 6, 2013, where plaintiff's counsel asked to extend the discovery deadline for the purposes of filing an amended complaint. To examine whether plaintiff had good cause for requesting a discovery extension, the Court requested a chronology of the discovery efforts, which defendant provided in a letter dated March 11, 2013. Jacob Time stated that all relevant information — including that which concerned the identities of Jacob Time's third-party suppliers — had been provided to TechnoMarine in January 2013. (ECF No. 51.) In a March 13, 2013 response, TechnoMarine did not contest the chronology that Jacob Time provided; it merely expressed a desire to have more time for discovery and to add more claims. (ECF No. 58.) Consequently, the Court issued an Order on March 18, 2013, denying any extension of discovery because "no showing of good cause or significant efforts [had] been shown" to justify an extension of the schedule entered in November 2012. (ECF No. 61.)

II.   STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In making the determination, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). The non-moving party must support its assertion that there is a genuine dispute by citing to specific materials in the record, Fed. R. Civ. P. 56(c)(1)(A), and may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985)).

Accordingly, Local Rule 56.1 requires the movant to submit a statement of the material facts about which it contends there is no genuine issue to be tried; the non-movant must submit a corresponding statement showing which of those assertions it disputes. See Local Civil Rule 56.1; see also Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 312 (2d Cir. 2008). "[A] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record. Where . . . the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded

6

and the record viewed independently." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) (footnote and citation omitted).

III.   DISCUSSION

Plaintiff has two claims remaining: for tortious interference with contract and for copyright infringement. It does not raise a triable issue of fact as to either.

A. Tortious Interference

Plaintiff first alleges that Jacob Time's purchase of TechnoMarine products from authorized retailers constituted tortious interference with the ARAs between plaintiff and those retailers. However, plaintiff fails to raise a triable issue as to any of the elements of a tortious interference claim under New York law.

To withstand summary judgment as to a tortious interference claim, plaintiff must raise a triable issue as to four elements: (1) that a valid contract exists between plaintiff and a third party; (2) that defendant had knowledge of the contract; (3) that defendant intentionally and improperly procured the breach of the contract; and (4) that the breach resulted in damage to the plaintiff. White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 285 (2d Cir. 2006) (quoting Foster v. Churchill, 665 N.E.2d 153, 156 (N.Y. 1996)).

As to the first and second elements, plaintiff fails to raise a triable issue that a valid contract barring resale to Jacob Time existed, or that Jacob Time had knowledge of that specific contract. The evidence in the record demonstrates that Jacob Time first had actual or constructive notice of TechnoMarine's contractual ARAs by way of TechnoMarine's November 7, 2011 cease and desist letter. Thus,

TechnoMarine could not have tortiously interfered with the ARAs prior to November 7, 2011 — the date of the letter.[1]

However, plaintiff presents no evidence that Jacob Time's purchases after November 7, 2011, violated a valid contract — evidence that is required to satisfy the first tortious interference element. Instead, it is undisputed that Jacob Time only purchased a single watch from an "authorized retailer", Allen M., after November 7, 2011. TechnoMarine acknowledges that it did not have a written contract with the corporate entity Allen M. However, a written contract would be required to satisfy the New York statute of frauds. N.Y. Gen. Oblig. L. § 5-701 (McKinney 2002) (requiring written agreements for promises that are not to be performed within one year of making thereof). No such written contract exists here.

Even so, TechnoMarine argues that Allen M. was orally incorporated into its written ARA with Swiss Gold because the two jewelers share the same 100% owner, Allen Mamrout. TechnoMarine provides no factual or legal authority for this assertion, however. Rather, TechnoMarine has only produced the ARA whose face states it applies to "Allen Mamrout of Swiss Gold ('Retailer')". The Swiss Gold ARA has no provision extending Swiss Gold's rights and restrictions to affiliated entities.

---

[1] Plaintiff argues that a statement on Jacob Time's website that it "do[es] not have the pricing boundaries that are placed on authorized dealers and therefore [is] able to present [customers] the same watch at a very competitive price" is an admission by Jacob Time of its actual knowledge of TechnoMarine's ARAs with its authorized dealers. The Court disagrees. First, the statement did not refer to the TechnoMarine brand specifically, and the undisputed evidence is that Jacob Time sells many brands of watches. Moreover, Jacob Time's vice president testified that the statement was likely taken from a competitor's website. (Dep. of Selim Chakalo at 129:4-18, Feb. 28, 2013, Charron Decl. Ex. G.) Finally, as noted below, New York law requires evidence of defendant's knowledge of the specific contract and the specific third party bound by that contract to raise a triable issue as to knowledge — the website statement contains neither.

(ARA with Swiss Gold, Charron Decl. Ex. D, ECF No. 57.) While TechnoMarine USA CEO Steven Cohen testified to an "understanding" that the ARA with Swiss Gold also applies to Allen M., (Cohen Dep. 144:3-145:11), he did not testify as to any specific conversations with Mamrout to that effect. Even if an oral agreement could be valid, then, plaintiff fails to raise a triable issue of such an agreement.

Nor can TechnoMarine argue that Allen M. was automatically bound to the ARA with Swiss Gold by virtue of Mamrout's ownership of both entities. It is a widely accepted principle of New York and Florida[2] law that a corporation exists independently of its owner. See Morris v. N.Y.S. Dep't. of Taxation & Fin., 623 N.E.2d 1157, 1160 (N.Y. 1993); Roberts' Fish Farm v. Spencer, 153 So. 2d 718, 721 (Fla. 1963). Courts will only disregard the corporate form, or "pierce the corporate veil", of a corporation when it is necessary to prevent fraud or injustice, or when a parent dominates and controls a subsidiary. See, e.g., Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir. 1993); Roberts' Fish Farm, 153 So. 2d at 721 ("Those who utilize the laws of this state in order to do business in the corporate form have every right to rely on the rules of law which protect them against personal liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing of the corporate veil.").

---

[2] While the parties here have argued that New York law applies to the tortious interference claim, the text of the ARA with Swiss Gold contains a Florida choice of law clause. (See ARA with Swiss Gold § 14(c).) Therefore, the extent to which the ARA with Swiss Gold incorporated Allen M. would be a question of Florida, rather than New York, law.

Here, plaintiff presents no evidence of fraud or injustice, and there is no evidence that Swiss Gold is the parent corporation of Allen M. or vice versa. Therefore, Allen Mamrout's ownership of both Swiss Gold and Allen M. has no bearing on whether Allen M. had a valid contract with TechnoMarine at the time of Jacob Time's purchase. TechnoMarine did not.

Even if the purported contractual restriction existed, tortious interference still would not apply because Jacob Time fails to raise a triable issue as to the second tortious interference element — "actual knowledge of the specific contract." LinkCo, Inc. v. Fujitsu Ltd., 230 F. Supp. 2d 492, 495 (S.D.N.Y. 2002) (internal quotation marks and citation omitted). Knowledge of a "specific" contract requires that the defendant must know of a particular contract between plaintiff and a third party, rather than knowing in general that plaintiff has contracts or agreements with third parties. See Plasticware, LLC v. Flint Hills Res., LP, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (granting defendant's 12(b)(6) motion to dismiss the tortious interference with contract claim because plaintiff only alleged that "it has 'agreements' with its customers" and did not provide adequate details about a particular contract between itself and a third party); Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009) ("Although plaintiffs state in their supporting papers that defendants interfered with their customer contracts . . . the Amended Complaint does not specify a single customer contract with which defendants interfered."); Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770, 2003 WL 1858153, at *8 (S.D.N.Y. Apr. 10, 2003) ("[A]

10

plaintiff claiming tortious interference with a business relationship must at least identify the existing third party contract he claims was breached as a result of defendant's conduct.")(citation omitted).

Relatedly, New York law suggests that knowledge of a "specific" contract also means that the defendant must know of the <u>particular party</u> bound by the particular contract. In <u>Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.</u>, 50 N.Y.2d 183, 193 (N.Y. 1980), the New York Court of Appeals explained that, while a tortfeasor need not know all the details of a particular contract to have wrongfully interfered with that contract, "it must be established, as a threshold predicate for any claim of tortious interference, that the alleged tort-feasor knew that his competitor had a contract with <u>the</u> third party . . . ." <u>Id.</u> (emphasis added). The Court notes a subtle yet important distinction between "<u>the</u>" third party, as stated in <u>Guard-Life</u>, and "<u>a</u>" third party: the use of the word "the" indicates that the alleged tortfeasor must be on notice of the <u>identity</u> of the third party bound by the interfered-with contract. This interpretation is consistent with others in this District. <u>See, e.g.</u>, <u>B. Lewis Prods., Inc. v. Maya Angelou, Hallmark Cards, Inc.</u>, No. 01 Civ. 0530, 2005 WL 1138474, at *12-13 (S.D.N.Y. May 12, 2005) (holding that plaintiff's tortious interference claim could be sustained because Hallmark knew of plaintiff's contract <u>with Angelou</u> after receiving a letter stating that plaintiff had the "exclusive right to represent Angelou . . . as per the contract executed by [plaintiff] and Dr. Angelou . . . .") (internal quotation marks omitted); <u>Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.</u>, 241 F. Supp. 2d 246, 279 (S.D.N.Y. 2002)

11

("Hidden Brook must prove that [defendant] knew about its contract <u>with Levasseur</u> in order to sustain its claim of tortious interference with contract.") (emphasis added).

Even if TechnoMarine had a valid contract with Allen M., then, the tortious interference claim is barred because no evidence in the record indicates that Jacob Time was advised that Allen M. was <u>the</u> third party with whom plaintiff had an ARA. In fact, the November 7, 2011 cease and desist letter did not provide any names of authorized retailers for defendant to avoid. (Def.'s 56.1 ¶ 30.) The letter merely stated that Jacob Time's activities were "in direct violation of the contractual agreements that [TechnoMarine] has with its authorized dealers." (Nov. 7, 2011 Letter.) <u>Cf.</u> <u>Boehner v. Heise</u>, 734 F. Supp. 2d 389, 404-05 (S.D.N.Y. 2010) ("Because there is no evidence that Defendants[ ] knew of any specific contracts that Plaintiffs had with their customers, . . . no reasonable jury could conclude that . . . Defendants tortiously interfered with Plaintiffs' economic relations with their customers."); <u>Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs.</u>, 515 F. Supp. 2d 298, 315 (N.D.N.Y. 2007) (holding that plaintiff failed to state a claim for tortious interference with contract partly because the complaint never "single[d] out a particular contract that was known to [defendant]").

Lastly, plaintiff has not raised a triable issue as to the fourth tortious interference element — damages. Plaintiff argues it suffered harm to its business dealings but fails to provide any evidentiary support for that allegation. Rather, it points to the statement of TechnoMarine USA CEO Cohen that Jacob Time's

activities were "taking away sales from [TechnoMarine's] authorized distribution". (Cohen Dep. 92:20-21.) However, Cohen admitted that he did not have "direct evidence" of lost sales other than a few anecdotal complaints from five unnamed TechnoMarine sales representatives. (Id. at 93:25.) Cohen could not name any specific retailers who told TechnoMarine that they would not order any more watches from TechnoMarine due to Jacob Time's activities. (Id. at 103:2-6.) Nor did plaintiff's Rule 56.1 statement cite to any specific record evidence on damages. (See Pl.'s 56.1 Reply ¶ 45.)

In contrast, defendant points to record evidence demonstrating a lack of damages. First, TechnoMarine admits it has been paid in full by its authorized retailers. (Def.'s 56.1 ¶ 43.) Moreover, title passes from TechnoMarine to its authorized retailers upon delivery. (Id.) Therefore, any profit made from selling the watches after the authorized retailer has received them goes to the authorized retailer, not TechnoMarine. It is also important to note again that Jacob Time only bought one more watch from an authorized TechnoMarine dealer after the cease and desist letter. Even Cohen testified that he does not consider the unauthorized sale of a single watch to have an impact on TechnoMarine's business significant enough to warrant immediate termination of an ARA. (Cohen Dep. at 115:12-17.)

Nor does plaintiff raise a triable issue as to brand dilution. (Pl.'s 56.1 Reply ¶ 97.) Cohen asserted that "[his] inability to do business with retailers because of [discount retailers like Jacob Time]" was evidence that TechnoMarine's reputation had been harmed. However, plaintiff offered no documentary evidence beyond this

13

conclusory statement, which is insufficiently detailed to raise a triable issue as to damages as a matter of law. See, e.g., Smith v. Positive Prods, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005) (damages to reputation are recoverable in a breach of contract claim under New York law "only in exceptional cases where the plaintiff proves specific business opportunities lost as a result of its diminished reputation") (internal quotation marks and citation omitted); cf. Aljassim v. S.S. South Star, 323 F. Supp. 918, 928 (S.D.N.Y. 1971) (calculating damages for "injury to business reputation and loss of good will" resulting from tortious interference with contract by multiplying approximately 1,408 lost sales with $73.83 as plaintiff's unit profit).

As plaintiff raises no triable issues of fact as regards the existence of a valid contract, knowledge, or damages, Jacob Time is entitled to summary judgment on the tortious interference claim.

## B. Copyright Infringement

Plaintiff similarly fails to raise a triable issue as to copyright infringement. In order to establish a claim for copyright infringement, plaintiff must show ownership of a copyright and that defendant copied the protected material without authorization. See, e.g., Hamil America Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999). The term "copy" encompasses any infringement on one of the copyright owner's exclusive rights listed under 17 U.S.C. § 106, which include the exclusive right to "distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership". Tangorre v. Mako's Inc., No. 01 Civ. 4430, 2003 WL 470577, at *5 (S.D.N.Y. Jan. 6, 2003). However, there can be no such infringement on this

14

exclusive right to distribute if "the copyright owner sells or transfers a particular copy of his copyrighted work, [because] he divests himself of the exclusive right in that copy and the right to sell passes to the transferee." Walt Disney Prods. v. Basmajian, 600 F. Supp. 439, 442 (S.D.N.Y. 1984).

Plaintiff must therefore overcome the statutory presumption of 17 U.S.C. § 109(a), the "first sale doctrine", which states: "[T]he owner of a particular copy . . . lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy." In other words, anyone who "lawfully obtains" a copy of a copyrighted work can receive the protection of the first sale doctrine against the copyright owner. See Tangorre, 2003 WL 470577 at *8. The Supreme Court recently held that this first sale doctrine applies to copyrighted goods lawfully manufactured abroad.[3] Kirtsaeng v. John Wiley & Sons, Inc., 133 S. Ct. 1351, 1355-56 (2013).

Plaintiff has failed to raise an issue that defendant violated any copyright protections, including the first sale doctrine.[4] First, while plaintiff asserted in its SAC that (1) the TechnoMarine watches that Jacob Time sold were not genuine TechnoMarine watches, and (2) at least one of the watches sold was stolen, plaintiff

---

[3] At the motion to dismiss stage, this Court applied the Second Circuit's prior precedent holding that copyrighted goods manufactured abroad did not fall under the protection of the first sale doctrine. TechnoMarine SA, 905 F. Supp. 2d at 495. The Court's analysis in this Decision accounts for the intervening change in the law.

[4] The Court will presume that TechnoMarine has a valid copyright registration. It need not rule on the originality of the TechnoMarine logo or the the copyright misuse defense, as it grants defendant's motion on the basis of plaintiff's failure to raise a triable issue that its rights of copyright were violated.

submits no such evidence in opposition to the instant motion. Rather, plaintiff does not dispute that the watches were genuine. Instead, it attempts to deny the protection of the first sale doctrine to Jacob Time by arguing that Jacob Time has not traced back the chain of title to the watches to an authorized TechnoMarine source. (ECF No. 65 at 11.)

But defendant cannot bear the burden of tracing the chain of title where no record evidence — none — indicates that the watches at issue were anything other than genuine TechnoMarine products initially sold via authorized retailers.[5] It is true that the first sale doctrine would not be satisfied here if the unauthorized dealer from whom Jacob Time purchased its TechnoMarine stock had stolen the watches from TechnoMarine. See Quality King Distribs. v. Lanza Int'l, Inc., 523 U.S. 135, 146-47 (1998) ("[T]he first sale doctrine would not provide a defense . . . [for] one whose possession of the copy was unlawful [e.g., a seller with stolen motion picture prints]."); see also Hill Design, Inc. v. Hodgdon, No. Civ. 03-74-M, 2003 WL 21230383, at *3 (D.N.H. May 27, 2003) ("[W]here the seller is one who has stolen or otherwise wrongfully obtained the copies . . . the sale would not be by the owner of

---

[5] Plaintiff argues that summary judgment is not ripe for review since the factual record is incomplete. (See Decl. of Cindy Chan in Opp. to Def.'s Mot. for Summ. J. ¶¶ 13-14, ECF No. 67 ("Plaintiff believes that summary judgment is not ripe for review here where there is still no information with regards to where Jacob Time's unauthorized distributors obtained their TechnoMarine products.")) However, plaintiff cannot use this litigation as a fishing expedition to search for unnamed third parties that may have breached ARAs. As to the activities of Jacob Time here at issue, the Court notes that plaintiff pursued discovery in this matter with a distinct lack of vigor. The Court entered a Scheduling Order in November 2012; plaintiff received discovery as to the sellers of the watches purchased by Jacob Time on January 10, 2013. Plaintiff failed to demonstrate diligence in pursuing its discovery demands and did not request an extension of discovery until March 6, 2013 — five days prior to its close. The Court will not impose an additional burden on defendant where plaintiff has failed to demonstrate it could not have complied with the long-established Scheduling Order.

the copies or phonorecords, and hence, Section 109(a) [the first sale doctrine] would not be applicable." (quoting 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.12[B][6])). Whether a watch was stolen from plaintiff is within plaintiff's unique knowledge, however. The first sale doctrine cannot be read to require defendant to prove a negative — i.e., that the watch it purchased was not stolen — where only plaintiff possesses the sales and other data necessary to make that determination. Plaintiff has produced no such evidence to raise a triable issue here and the Court will not rely on defendant to prove a negative.

To hold otherwise would permit plaintiff to employ the device of a copyright infringement claim instead to fish for the names of authorized retailers who breached authorized retailer agreements. This is inconsistent with Supreme Court precedent holding that breaches of contractual relationships between manufacturers and retailers are not equivalent to copyright infringement. See Quality King, 523 U.S. at 143 (noting a "critical distinction between statutory [copyright] rights and contract rights"). Rather, once a legitimate first sale occurs, a later, unauthorized purchaser is not a copyright infringer. See Am. Int'l Pictures, Inc. v. Foreman, 576 F.2d 661, 664 (5th Cir. 1978) (citation omitted) ("Even if the copyright holder places restrictions on the purchaser in a first sale (such as specifying the permissible uses of the article), the buyer's disregard of the restrictions on resale does not make the buyer or the person who buys in the secondary market liable for infringement."). Therefore, although some of Jacob Time's transactions may have been unauthorized by TechnoMarine, they were not

<u>unlawful</u> for the purposes of the Copyright Act. <u>Compare</u> <u>Kirtsaeng</u>, 133 S. Ct. at 1357-58 (holding that the first sale doctrine is a defense against a copyright infringement action based on unauthorized resale of books) <u>and</u> Black's Law Dictionary (9th ed. 2009), unauthorized ("Done without authority") <u>with</u> <u>Quality King</u>, 523 U.S. at 146-47 (explaining that the first sale doctrine would not be a defense for someone whose possession of a copy was "unlawful") <u>and</u> Black's Law Dictionary (9th ed. 2009), unlawful ("1. Not authorized by law; illegal"). Plaintiff may well have viable breach of contract actions against its authorized retailers for sales to Jacob Time; however, this copyright infringement litigation is not the place for that breach of contract action to be staged. <u>See</u> <u>U.S. Naval Inst. v. Charter Commc'ns, Inc.</u>, 936 F.2d 692, 695 (2d Cir. 1991) (citations omitted) "("[A]n exclusive licensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it.").[6]

---

[6] The parallels between <u>Charter Communications</u> and this case are instructive. In <u>Charter Communications</u>, the plaintiff and the defendant entered into a licensing agreement, effective September 1984, which granted defendant the exclusive license to publish a particular title "not sooner than October 1985." 936 F.2d at 693-94. Defendant began publishing earlier than this date so that retail sales began in September 1985, and plaintiff sued defendant for copyright infringement. <u>Id.</u> at 693. The Second Circuit determined that defendant did not infringe on the plaintiff's copyright because, based on the express provisions of the licensing agreement, it had already received the right to publish the title in September 1984. <u>Id.</u> at 695. Rather, by not adhering to the terms of the agreement and publishing earlier than October 1985, defendant had merely breached the agreement. <u>Id.</u> at 696. The instant case parallels <u>Charter Communications</u>: here plaintiff has claimed copyright infringement because of unauthorized sales on the part of its own authorized retailers. Those retailers, like the defendant in <u>Charter Communications</u>, received a right under plaintiff's copyright — the right to resell the watches — when the ARA was executed. By selling the watches "in any other manner than at retail", the authorized retailers breached the terms of the ARA; neither the retailers nor the purchaser, Jacob Time, infringed on the copyright.

As TechnoMarine fails to raise a triable issue that the watches sold by Jacob Time were not genuine or were stolen, defendant is entitled to summary judgment on the copyright infringement claim as well.

IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED and this case is dismissed.

The Clerk of Court is directed to close the motion at ECF No. 53, to terminate all remaining dates, and to close this case.

SO ORDERED.

Dated: New York, New York
July 16, 2013

_____
KATHERINE B. FORREST
United States District Judge